WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wayne Portanova,<br><br>            Plaintiff,<br><br>v.<br><br>Enel Green Power North America Incorporated and Enel Cove Fort LLC,<br><br>            Defendants. | No. CV-16-01162-PHX-NVW<br><br>**ORDER** |

Before the Court is a motion to dismiss for lack of personal jurisdiction brought by Defendants Enel Green Power North America, Inc. ("EGP-NA") and Enel Cove Fort, LLC ("Cove Fort").  (Doc. 15.)  Plaintiff Wayne Portanova ("Portanova") filed a response (Doc. 19), to which the defendants subsequently filed a reply (Doc. 20).  The Court now considers these and all accompanying documents.

**I. FACTUAL BACKGROUND**

In a motion to dismiss, all disputed facts must be resolved in favor of the plaintiff. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  Construed accordingly, the relevant facts of this case are as follows.

EGP-NA is a corporation with its principal place of business in Massachusetts and its place of incorporation in Delaware.  (Doc. 12, ¶ 2.)  Cove Fort, which is partially

owned by EGP-NA,[1] is a limited liability corporation also organized under the laws of Delaware and also having its principle place of business in Massachusetts. (Doc. 12, ¶ 4.)[2] Together, EGP-NA and Cove Fort (collectively "Defendants") own and operate a geothermal electric plant that uses geothermal energy to produce electricity. (Doc. 19 at 4.) The plant is located in Cove Fort, Utah. (Doc. 12, ¶ 4.) While EGP-NA has (or will soon have) power plants in twenty-one states (Doc. 19 at 2), Portanova concedes that neither company is a "resident" of Arizona, nor does either one have "any identifiable affiliated entities operating in Arizona" (Doc. 12, ¶ 4).

Cove Fort, however, has at least one agreement to sell "metered output" (electricity) to an Arizona entity. (*See* Doc. 15-2 at 5.) This agreement, called the Power Purchase Agreement, is between Cove Fort as the seller and the Salt River Project Agricultural Improvement and Power District ("SRP") as the buyer. (Doc. 15-2 at 6.) SRP is "a political subdivision of the State of Arizona" (Doc. 15-2 at 6), specifically an agricultural improvement district formed under Title 48, Chapter 17 of the Arizona Revised Statutes. *See* A.R.S. § 48-2301 to -2315.[3] SRP employs over 5,000 Arizona residents and serves nearly one million Arizona customers with an electric service area of approximately 3,000 square miles. (Doc. 19 at 7.) By its terms, the Power Purchase Agreement provides that Cove Fort will sell SRP all electricity from its Cove Fort, Utah power plant over the course of twenty years. (Doc. 19 at 5.) By Portanova's calculations, based on a sale price of $79.00 per megawatt hour and a contractual minimum of 140,000 megawatt hours per year, SRP will pay Cove Fort as much as $220 million over the duration of the Power Purchase Agreement. (Doc. 19 at 5-6.) Cove Fort

---

[1] According to the Defendants, EGP-NA is a "partial parent" of Cove Fort's through a four-layer chain of ownership. (Doc. 20 at 2; Doc. 20-2 at 1.)

[2] Though the body of Portanova's complaint lists Cove Fort as a "Limited Liability Company" (Doc. 12, ¶ 4), the headings of all filings in this case (including the complaint itself) have referred to Cove Fort as a Limited Liability Corporation. This fact is not material to the present order.

[3] For discussion of the legal structure and operations of SRP, see *Ball v. James*, 451 U.S. 355 (1981).

1  sends monthly invoices for the electricity to SRP's post office box address in Phoenix, Arizona. (Doc. 19 at 6.) By the terms of the Power Purchase Agreement, Cove Fort has agreed to have all disputes over the Power Purchase Agreement resolved solely in Arizona state and federal courts, and pursuant to Arizona state law. (Doc. 19 at 6.)

Portanova, a resident of Arizona, is not a party to the Power Purchase Agreement, nor does he claim any rights under its terms. Rather, Portanova owns the rights to royalties from geothermal energy produced on certain lands in Utah and alleges that Defendants have extracted geothermal energy from these lands without paying him the royalties to which he is legally entitled. (Doc. 19 at 4.) He filed a complaint in the District of Arizona on April 21, 2016 (Doc. 1), which has since been amended twice (Docs. 8, 12). The complaint alleges only a breach of contract on the part of Defendants for failing to pay Portanova royalties to which he is legally entitled. (Doc. 12, ¶ 56.) Portanova maintains that this Court has personal jurisdiction over both Defendants by virtue of Cove Fort being a party to the Power Purchase Agreement. (Doc. 12, ¶ 10.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Upon a defendant's motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to demonstrate that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Where the motion is based solely on written materials, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)); *Schwarzenegger*, 374 F.3d at 800. A plaintiff "cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *CollegeSource*, 653 F.3d at 1073 (quoting *Schwarzenegger*, 374 F.3d at 800).

### B. Personal Jurisdiction

Where, as here, there is no applicable federal statute governing personal jurisdiction, "the district court applies the law of the state in which the district court sits." *Schwarzenegger*, 374 F.3d at 800–01 (citing Fed. R. Civ. P. 4(k)(1)(A)). Because Arizona's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *See Schwarzenegger*, 374 F.3d at 800–01 (applying same rule for California); *A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (1995) ("Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution."). To determine whether jurisdiction comports with due process, a court must analyze the defendant's contacts with the selected forum. *Tuazon v. R.J. Reynolds Tobacco, Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006). The defendant must have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).

Provided this bar is cleared, personal jurisdiction can be either "specific" or "general." A court may exercise specific jurisdiction over a corporate defendant where "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler AG v. Bauman*, — U.S. —, 134 S. Ct. 746, 754 (2014) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)) (alterations in original). General jurisdiction, on the other hand, does not require a connection between the forum and the suit's underlying events. Rather, general jurisdiction over a corporation exists where "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler*, 134 S. Ct. at 754 (quoting *International Shoe*, 326 U.S. at 318) (alteration in original). The "paradigmatic locations" for general jurisdiction over a corporation "are its place of incorporation and its principal

place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citation omitted), *cert. denied*, 136 S. Ct. 915 (2016). Mere activity in the forum will not suffice; a defendant's contacts must be such as to render it "essentially at home" there. *Daimler*, 134 S. Ct. at 754; *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (citation omitted), *cert. denied*, 135 S. Ct. 2310 (2015); *see also Tuazon*, 433 F.3d at 1169 (for general jurisdiction, "a defendant must not only step through the door, it must also sit down and make itself at home") (internal quotation marks omitted). "Only in an exceptional case will general jurisdiction be available anywhere else" besides a corporation's place of incorporation or its principal place of business. *Tuazon*, 433 F. 3d at 1169 (citing *Martinez*, 764 F.3d at 1067) (internal quotation marks omitted).

The quintessential example of general jurisdiction is *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). In *Perkins*, Japan's occupation of the Philippines drove Benguet, a mining company incorporated in the Philippines, to cease its operations there and station its president (who was also Benguet's general manager and principal stockholder) in Ohio. *Id.* at 447-48. From an Ohio office, the president handled the company's correspondence, drew employee paychecks from an in-state bank, maintained its documents, and held directors' meetings, a combination the Court determined was sufficient for an Ohio court to exercise jurisdiction over Benguet in a claim that neither arose in Ohio nor involved any of Benguet's affairs in that state. *Id.* at 448. Though the *Perkins* Court never used the term "general jurisdiction," the Supreme Court has recently called the case the "textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." (*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 928 (2011) (citation and internal quotation marks omitted).

But cases like *Perkins* are unusual. More common are cases like *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1101 (2012). In *Mavrix*, the Ninth Circuit ruled that a California court lacked general jurisdiction (but did have specific jurisdiction) over the defendant in a copyright

1. infringement suit alleging the unlawful republication of online photographs. *Id.* at 1221. The court identified several connections between the defendant and California, including agreements with several California businesses, a website designed and maintained by a California firm, advertisements on one of its websites by a California advertising agency, a California wireless provider hosting one of its websites for mobile users to access, and a "link-sharing" agreement with a California-based national news site. *Id.* at 1222. But the court held that even taken together, these relationships "constitute 'doing business with California,' but not necessarily 'doing business in California.'" *Id.* at 1226. *See also Martinez*, 764 F.3d at 1070 (no general jurisdiction where out-of-state corporation had contracts of up to $400 million with in-state corporations, eleven contracts with in-state component suppliers, and corporate representatives attending conferences and meeting with suppliers in the forum state, among other contacts); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) (no general jurisdiction despite solicitation of distributorship agreement, several in-person visits, multiple component purchases, and frequent communications made in forum state, as well as purchase agreements binding defendant to adjudicate relevant disputes in the forum state).

**III. ANALYSIS**

Because Defendants have moved to dismiss, Portanova carries the burden to show personal jurisdiction is appropriate. *See Schwarzenegger*, 374 F.3d at 800. In his response to Defendants' motion, Portanova repeatedly avers that "personal jurisdiction" is warranted here but never expressly states whether he believes that jurisdiction to be general or specific. He does, however, frame his legal analysis around the standards for "general jurisdiction." (Doc. 19 at 7.) Since he has offered no showing of specific jurisdiction in Arizona for this case, the absence of specific jurisdiction is not in dispute. Though that leaves only general jurisdiction at issue, neither side contends that either EGP-NA or Cove Fort was incorporated in Arizona, or that either one has its principle place of business here. The sole issue, then, is whether this is an "exceptional case"

warranting general jurisdiction nonetheless.

According to Portanova, "this Court may exercise general jurisdiction over defendants who 'engage in continuous and systematic general business contacts…in the forum state.'" (Doc. 19 at 7 (quoting *Schwarzenegger*, 374 F.3d at 801).) But the *Schwarzenegger* court said more than this—as Portanova's ellipsis reluctantly acknowledges. General jurisdiction is not warranted when business contacts are merely continuous or systematic; the defendant must engage in such contacts "*that 'approximate physical presence'* in the forum state." *Schwarzenegger*, 374 F.3d at 801 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)) (emphasis added). *See Daimler*, 134 S. Ct. at 754 (general jurisdiction appropriate where "affiliations with the State are so continuous and systematic as to render [the defendant] essentially at home in the forum state"); *Martinez*, 764 F.3d at 1066 (defendant's contacts with forum state must be "so constant and pervasive as to render it essentially at home in the state"); *Tuazon*, 433 F.3d at 1169 (for general jurisdiction to be warranted, "a defendant must not only step through the door, it must also sit down and make itself at home") (internal quotation marks and alterations omitted).

Portanova nonetheless urges that a substantial or continuous and systematic presence will do the trick, and that "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence." (Doc. 19 at 7 (quoting *Mavrix*, 647 F.3d at 1224) (internal quotation marks omitted).) In light of this test, he points to three particular aspects of his own case that he believes militate in favor of general jurisdiction. First, he calls attention to the Power Purchase Agreement's long duration and high value. (Doc. 19 at 8.) Second, he urges that by entering a contract with a political subdivision of Arizona, "it is the same as if Defendants had entered the Power Purchase Agreement with the City of Phoenix and its residents, or the State of Arizona itself." (*Id.* at 9.) And third, he argues that because Cove Fort voluntarily agreed to be subject to Arizona law and the jurisdiction of Arizona courts in the Power Purchase Agreement, Cove Fort has waived

its right to contest jurisdiction here. (*Id.* at 9.)

Even assuming all of Portanova's factual assertions are true, he still falls well short of establishing that even Cove Fort—let alone EGP-NA—has "approximate[d] physical presence," *Schwarzenegger*, 374 F.3d at 801, or is "essentially at home," *Daimler*, 134 S. Ct. at 754, in Arizona. By Portanova's own admission, EGP-NA is incorporated in Delaware, has its principal place of business in Massachusetts, and owns and operates renewable energy plants (or is currently developing them) "in 21 U.S. States, but not in Arizona." (Doc. 19 at 2.) EGP-NA "is not registered to do business, either as a local subsidiary or as a foreign corporation, in the state of Arizona." (*Id.*) Similarly, Cove Fort is organized under the law of Delaware, has its principal place of business in Massachusetts, and "does not have any members in Arizona." (*Id.* at 2-3.) Neither EGP-NA nor Cove Fort "ha[s] any identifiable affiliated entities operating in Arizona." (*Id.* at 3.) With their respective places of incorporation/organization and principal places of business stipulated out of contention, the only other route to general jurisdiction would be to declare this an "exceptional case" warranting such a result. *See Ranza*, 793 F.3d at 1069. There are simply no grounds on which to do this. Defendants are in no sense "at home" or "physically present" in Arizona by virtue of Cove Fort merely being a party to the Power Purchase Agreement. Even the choice-of-law and venue provisions in the Power Purchase Agreement do not change the analysis, as those apply only to disputes arising out of the Power Purchase Agreement itself. *See, e.g.*, *Gates*, 743 F.2d at 1331 (denying general jurisdiction on grounds that, among other things, the choice of forum provision in one of defendant's contracts "applies only to disputes arising out of those agreements"); *Salu, Inc. v. Original Skin Store*, No. CIV. S-08-1035 FCD/KJM, 2008 WL 3863434, at *3 (E.D. Cal. Aug. 13, 2008) (finding that defendant's third-party contracts with forum selection clauses were "insufficient to approximate physical presence in the state").

To subject a defendant to general jurisdiction allows that defendant "to be haled into court in the forum state to answer for any of its activities anywhere in the world."

*Martinez*, 764 F.3d at 1067 (citation and internal quotation marks omitted). Permitting such a sweeping grant of jurisdiction on the present facts "would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Daimler*, 134 S. Ct. at 761-62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Portanova has failed to make a prima facie case that this Court can exercise personal jurisdiction over the Defendants without violating due process. Accordingly, Defendants' motion to dismiss is granted.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. 15) is granted for lack of personal jurisdiction.

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing this action without prejudice for lack of personal jurisdiction.

The Clerk shall terminate this case.

Dated this 30th day of September, 2016.

Neil V. Wake
United States District Judge